# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

## CASE NO.:

JUDITH RAULERSON, an individual,

        Plaintiff,

v.

FINANCIAL SOLUTIONS GROUP, LLC,
a Delaware limited liability company, and
STEVEN LOVERN, an individual, doing business
as "THE LAW OFFICE OF STEVEN LOVERN,"
JOHN DOE 1-15, unknown individuals, and
JOHN DOE CORPORATION 1-10, unknown
business entities,

        Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, Judith Raulerson, an individual, by and through her undersigned attorney, sues Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, doing business as "The Law Office of Steven Lovern," and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, and alleges:

1

## *INTRODUCTION*

1.      This lawsuit involves claims by an 85-year-old senior citizen in Florida who was deceived into paying a substantial sum of money to alleged lawyers in Indiana with the expectation that Defendants would relieve her of her debt burdens and improve her credit by asserting various claims and defenses – which are now revealed to be fictitious – to her credit obligations.

2.      As detailed below, under the guise of providing legal services, Defendants operated an advance fee scheme designed to extract fees regardless of whether any useful services were performed. As a result of the bogus credit services program operated by Defendants, Ms. Raulerson found herself in greater financial difficulty with defaulted debt obligations and further impaired credit than she had before she encountered Defendants.

3.      The jurisdiction of this Court is established pursuant to 15 U.S.C. §1679, *et seq.* known more commonly as the "Federal Credit Repair Organizations Act" ("CROA"), and 15 U.S.C. §6101, *et seq.*, known more commonly as the "Federal Telemarketing and Consumer Fraud and Abuse Prevention Act," and with respect to state law claims pursuant to the pendent jurisdiction of this Court pursuant to 28 U.S.C. §1367.

## ALLEGATIONS AS TO PARTIES

4.      At all times material hereto, Plaintiff, Judith Raulerson ("Ms. Raulerson"), was *sui juris* and a resident of St. Johns County, Florida.

5.      At all times material hereto, Defendant, Financial Solutions Group, LLC ("FSG"), was a Delaware limited liability company doing business at 11650 Olio Road, Suite 1000-259, Fishers, Indiana 46037.

6.      At all times material hereto, Defendant, Steven Lovern ("Mr. Lovern" or "Attorney Lovern"), was *sui juris* and a resident of Hamilton County, Indiana doing business as "The Law Office of Steven Lovern."

7.      At all times material hereto, Defendants John Doe 1-15 ("Unknown Individual Defendants"), were persons who directly participated or aided and abetted in the misconduct described below but whose identities are currently known to Ms. Raulerson.

8.      At all times material hereto, Defendants John Doe Corporations 1-10 ("Unknown Corporate Defendants"), were business entities which directly participated or aided and abetted in the misconduct described below but whose identities are currently unknown to Ms. Raulerson.

9.      Through discovery, Ms. Raulerson shall identify the Unknown Individual Defendants and Unknown Corporate Defendants (collectively "Unknown

3

Defendants") and shall amend her pleadings to name and serve same.

10.    At all times relevant hereto, none of the Defendants were registered to do business in the State of Florida.

11.    At all times relevant hereto, Defendants were not licensed in Florida as a credit service organization, credit repair company, a debt adjustment company, nor did any Defendant hold any business license in the State of Florida.

12.    By information and belief, the contract and other forms presented to Ms. Raulerson are standard documents FSG presents to all consumers to whom Defendants market FSG's services.

## FACTUAL ALLEGATIONS

### A.  OVERVIEW OF BUSINESS MODEL OF DEFENDANTS

13.    A large number of individuals and families throughout the United States are struggling to pay their credit card debts because of economic forces largely beyond their control. Such families are vulnerable to predatory businesses that entice consumers with the prospect of settling such debt for pennies on the dollar and restoring creditworthiness to the consumer.

14.    Due to the unfair and deceptive practices endemic to the "debt relief" industry, the Federal Trade Commission ("FTC") amended the Telemarketing Sales Rules ("TRS") to regulate debt relief in 2010.  Most significant in the amendments

to the TRS is an "advance fee ban" which prohibits firms from collecting fees on accounts except where a settlement agreement has been reached and at least one settlement payment has been made by the consumer to the creditor.

15.    Following the issuance of the FTC debt settlement rules, there has been a rise in various attorney-related debt settlement models, in an apparent effort to evade both the FTC's advance fee ban, as well as state laws that often exempt attorneys from their debt settlement regulations.

16.    While the models differ across companies, in each, attorneys and non-attorneys are affiliated, but the attorneys are present largely to provide a cover for collecting advance fees. In most instances, the attorneys do not engage in legal work and only non-attorneys perform debt settlement work. *See, Consumer Financial Protection Bureau v. Stratfs, LLC*, 2024 WL 911518 (W.D. N.Y March 4, 2024) (preliminary injunction against telemarketing firm using multiple law firms to evade FTC advance fee ban); *see, also*, Elizabeth Ody, "*Debt Firms Play Whack-a-Mole to Skirt Fee Ban*," Bloomberg News (September 29, 2011

17.    The unlawful activities of FSG and its business partners have not gone unnoticed by consumers and regulatory authorities. In October 2024, the Minnesota Attorney General obtained a Consent Decree against FSG with respect to FSG's

misrepresentation of its debt settlement services.[1]

18.    On December 9, 2024, the Connecticut Banking Commissioner obtained a Temporary Order to Cease and Desist directed to FSG with respect to its deceptive debt settlement practices.[2]

## B.  FRAGILE FINANCIAL CIRCUMSTANCES OF MS. RAULERSON

19.    For the past several years, Ms. Raulerson has been living on the thinnest of financial margins. As a result of the death of her husband in 2019, the household income of Ms. Raulerson has been dramatically reduced to the point that Ms. Raulerson could not keep current with her monthly bills.

20.    The only source of income for Ms. Raulerson was a small Social Security check.

21.    Despite her best efforts, Ms. Raulerson found it increasingly difficult to keep pace with her bills to the extent that her credit card accounts began to have ever larger balances.

## C.  USE OF COLD CALL AND DECEPTION TO ENSNARE UNSUSPECTING OUT-OF-STATE CONSUMERS

---

[1] https://www.ag.state.mn.us/Office/Communications/2024/10/21_FinancialSolutionsGroup.asp
[2] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://portal.ct.gov/-/media/dob/enforcement/consumer-credit/2024-cc-orders/accelerated-debt-settlement-inc-et-al---temp-cd-rest-noi-cd-cp.pdf?rev=3d8c0529f88d4261836d671350e1bcfe&hash=26BA138C228B8D5030D922D4D218FB26

### *1.  Unsolicited Sales Call from Defendants*

22.    On or about February 16, 2023, Ms. Raulerson received an unsolicited telephone call from an employee of Defendants offering assistance with monthly bills.

23.    As part of the deceptive sales pitch, the caller informed Ms. Raulerson that Defendants could "*help with debts*" and that through an unspecified "*program*," the Defendants could reduce the debt obligations of Ms. Raulerson to less than a quarter of the current balances and help fix her credit.

24.    As Ms. Raulerson was struggling to pay her bills, Ms. Raulerson informed the caller that Ms. Raulerson would be interested in the "program."

25.    In her conversation with the salesperson, Ms. Raulerson related that she had the following credit card accounts that she needed help with:

| Name of Credit Card | Approximate Balance (as of Feb. 2023) |
|---|---|
| Sears | $ 2,212.34 |
| JC Penney | $     53.16 |
| Target | $ 3,964.31 |
| Bank of America (Acc. ending in 6504) | $18,223.17 |
| Bank of America (Acc. ending in 1602) | $ 6,515.08 |
| Belk/Synchrony Bank | $    630.84 |
| TOTAL: | $31,598.90 |

(collectively, "Raulerson Creditors")

7

26.     After Ms. Raulerson indicated that she would be interested in the services offered by Defendants, the caller informed Ms. Raulerson that it was important for Ms. Raulerson to quit paying creditors.

### 2. Unlawful and Deceptive Debt Settlement Services Contract

27.     The caller then sent to Ms. Raulerson by fax a document entitled "Legal and Consulting Services Agreement" ("Contract").

28.     A copy of the Contract is attached hereto as Exhibit "A."

29.     Pursuant to the Contract, Defendants agreed to *inter alia* perform the following "services":

- To provide a "letter of representation" signed by Mr. Lovern as the "National Director of Litigation" to the Raulerson Creditors;

- To send a "cease and desist letter" to the Raulerson Creditors;

- To send a "debt verification letter" to the Raulerson Creditors;

- To engage in "debt negotiation" with the Raulerson Creditors; and

- To file lawsuits against creditors for violations of "federal law."

30.     In reliance upon the various representations made by Defendants, Ms. Raulerson agreed to employ Defendants to assist her in dealing with her crushing credit problem.

8

31.    Pursuant to the Contract, Ms. Raulerson became obligated to pay Defendants the sum of Fifteen Thousand One Hundred Dollars ($15,100.00) ("Credit Services Fee").

### 3. Defendants Charge Up the Credit Cards that They Were Supposed to Settle.

32.    On February 17, 2023, Defendants charged Belk/Synchrony Mastercard of Ms. Raulerson in the amount of Seven Thousand Three Hundred Dollars ($7,300) for legal fees ("Synchrony Credit Card Charge").

33.    The Synchrony Credit Card Charge increased the card balance from $630.84 to $8,045.72.

34.    On February 17, 2023, Defendants charged the Sears/CitiFinancial Mastercard of Ms. Raulerson in the amount of Seven Thousand Eight Hundred Dollars ($7,800.00) for legal services ("Sears Credit Card Charge").

35.    The Sears Credit Card Charge increased the card balance from $2,162.36 to $10,231.24.

36.    Ms. Raulerson would not have agreed to the Synchrony Credit Card Charge or Sears Credit Card Charge (collectively, "Credit Card Charges") if she knew that the Defendants would not be providing any meaningful legal services.

37.    Defendants made the Credit Card Charges even though Defendants had

been employed to settle or eliminate the debts with the same card providers. As such, Defendants were essentially defrauding the Raulerson Creditors by incurring debt that were also instructing Ms. Raulerson not to pay.

### 4. *Bogus Use of Attorney Lovern's Law License*

38.     In the marketing by Defendants and in the paperwork provided to Ms. Raulerson, Attorney Lovern is described as being the "National Director of Litigation."

39.     At the request of Defendants, Ms. Raulerson signed a document entitled "General Durable Power of Attorney" ("Lovern POA").

40.      A copy of the Lovern POA is attached hereto as Exhibit "B."

41.     The Lovern POA represented that "this instrument was prepared by Steven Lovern, Attorney at Law, Law Office of Steven Lovern, 1 (800) 653-1336" ("Faux Law Firm Address").

42.     By information and belief, the Faux Law Firm Address listed in the Contract and the Lovern POA is not a place of business but rather a mail drop at a UPS Store in Indiana.

43.     By information and belief, Attorney Lovern does not practice at the Faux Law Firm Address but at 963 N. Girls School Road, Indianapolis, Indiana

46214 where he maintains a law practice handling bankruptcy and estate planning.[3]

44.     At all times relevant, Attorney Lovern advertised and held himself out to be the "National Director of Litigation" for FSG.

45.     At all times relevant, Attorney Lovern was also listed on the website of FSG as its "In-House" Attorney.

46.     By publicly affiliating as FSG's attorney and as its "National Director of Litigation," Attorney Lovern lent credence to the illegal acts and omissions of the fraudulent telemarketing scam complained of herein.

47.     Attorney Lovern lent his name and status as an attorney to instill in consumers, including Ms. Raulerson, a false sense of legitimacy and legality of FSG's operations, when FSG's operations were in fact replete with fraud, misrepresentation, deception, and violations of numerous federal and state laws.

48.     Attorney Lovern, by lending his name and status as an attorney, deceptively misled consumers, including Ms. Raulerson, into a false sense of security and reassurance and that he would have meaningful involvement in the representation of Ms. Raulerson when in fact he would not have anything to do with her legal matter, despite Ms. Raulerson paying over $15,000 in fees to the

---

[3] *See, https://lovernlaw.net/* (last accessed on 02-11-25)

Defendants.

49.    Attorney Lovern participated in and furthered FSG's scam for his own pecuniary gain either knowing that the co-Defendants were engaging in a pattern and practice of deception or consciously avoiding knowing about their deceptive activities. In short, Attorney Lovern sold his law license to his non-lawyer business partners.

### 5. The Fake "Services" of Defendants

50.    The Attorney Employment Agreement and POA are replete with numerous misrepresentations. One such misrepresentation pertains to ¶ 1(B) of the Contract, which provides:

(B) <u>CEASE AND DESIST LETTER</u>:

The Company shall send a CEASE-AND-DESIST LETTER to each of the Client's  creditors listed in "Exhibit A" informing them to immediately cease and desist all  contact from them to the Client by any means (phone, mail, text, email or  otherwise). This letter will reference the Federal Statute concerning the Fair Debt  Collection Practices Act. This Statute provides for Civil Penalties if the Client's creditors do not comply with our request. The letter also directs them to contact us  concerning the Client's debt(s) going forward.

("Validation Provision")

51.    The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), applies to "debt collectors," who are entities that use "any

instrumentality of interstate commerce or the mails in any business the principal

purpose of which is the collection of any debts, or who regularly collects or attempts

to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another." 15 U.S.C. § 1692a(6). As such, the FDCPA does not apply to creditors.

The statement that the FDCPA "provides for Civil Penalties if the Client's creditors

do not comply with our request" is false.

52.    Ms. Raulerson's credit card lenders, as listed in the Contract, are not

third- party debt collectors. They are the actual creditors. There are no civil penalties

under the FDCPA if any of these creditors simply ignore FSG's or Lovern's letters.

This is yet another misrepresentation by Defendants to Ms. Raulerson.

53.    Paragraph 3 of the Contract states:

> The Company begins working for the Client by sending notifications to the Client's creditors (Cease & Desist Letter). This notification comes from the Company's National Director of Litigation and is notice that we represent you in these legal matters. There will be no additional costs or expenses required to be paid to the Company during the term of this agreement unless the Client desires to add additional creditors to "Exhibit A". The company's fees shall be adjusted accordingly, and an additional Agreement will be prepared and signed by both the client and the Company. WARNING: DO NOT SIGN THIS AGREEMENT UNLESS YOU WANT THE SERVICES OF THE COMPANY, YOU ARE NOT ENTITLED TO A REFUND ONCE PAYMENT HAS BEEN MADE.

("Litigation Provision")

13

54.    Through the Litigation Provision, Defendants falsely state that Attorney Lovern, an Indiana attorney who is not admitted to practice law in Florida, could legally represent Ms. Raulerson, a Florida consumer, on "legal matters" regarding consumer credit transactions arising in Florida.

### D.  FAILURE OF DEFENDANTS TO PERFORM ANY MEANINGFUL SERVICES.

55.    Despite the payment of the Credit Services Fee, the Defendants performed no meaningful legal or other services on behalf of Ms. Raulerson.

56.    On November 10, 2023, T.D. Bank filed or caused to be filed a collection lawsuit in that certain case styled "*T.D. Bank USA, N.A. v. Judith Raulerson*, In the County Court, in and for St. Johns County, Florida; Case No.: SP-23-6827 ("St. Johns County Collection Proceeding").

57.    After being served with the Summons and Complaint in the St. Johns County Collection Proceeding, Ms. Raulerson immediately contacted Defendants to inform Defendants that a lawsuit had been filed by TD Bank and that she needed immediate assistance to respond to same.

58.    Despite Ms. Raulerson contacting Defendants, Defendants offered no legal assistance to defend the St. Johns County Collection Proceeding.

59.    On November 4, 2024, the Court having jurisdiction of the St. Johns

County Collection Proceeding entered a Default Final Judgment against Ms. Raulerson for $4,897.17.

### E.  VIOLATION OF FLORIDA RULES OF PROFESSIONAL CONDUCT WITH RESPECT TO LEGAL SERVICES

60.    In contravention of Rule 4-1.5(a), Rules Regulating the Florida Bar, Defendants as attorneys entered into an agreement for, charged or collected illegal, prohibited or clearly excessive fee or cost or a fee generated by employment that was obtained through advertising not in compliance with the Rules Regulating the Florida Bar.

61.    The fees charged and collected by Defendants were unreasonable after consideration of all factors set forth in Rules 4-1.5(b) and (c), Rules of Professional Conduct, Rules Regulating the Florida Bar.

### F.  DAMAGES OF MS. RAULERSON

62.    The conduct of Defendants has caused Ms. Raulerson great actual economic and non-economic harm and injury.

63.    The economic damages of Ms. Raulerson include the monies paid to Defendants, damage to the credit and credit reputation of Ms. Raulerson and the entry of the judgment in the St. Johns County Collection Proceeding.

64.    The non-economic intangible damages of Ms. Raulerson include but

are not limited to personal humiliation, exasperation, fear and apprehension, embarrassment, depression, outrage, mental anguish, emotional distress, anger, physical and mental pain and suffering. The hedonic damage to Ms. Raulerson is especially great as she is a woman no longer young who now lives in fear that she will lose her property to the judgment creditor in the St. Johns County Collection Proceeding.

<div align="center">

**COUNT I - ACTION FOR VIOLATION OF
THE FEDERAL CREDIT REPAIR ORGANIZATIONS ACT**

</div>

65.    This is an action for violation of 15 U.S.C. §1679b, *et seq.*, known more commonly as the "Federal Credit Repair Organizations Act" ("CROA").

66.    Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

67.    At all times material hereto, Ms. Raulerson was a "consumer" as said term is defined under 15 U.S.C. §1679a (1).

68.    At all times material hereto, Defendants were a "credit repair organization" as said term is defined under 15 U.S.C. §1679a (3).

69.    At all times material hereto, Defendants were persons who used any instrumentality, interstate commerce or the mail to sell, provide or perform (or represents that such person can or will sell, provide or perform) any service in return

for the payment of money or the value of consideration for the express or implied purpose of:

    (a)    improving the credit, credit history or credit rating of a consumer; or

    (b)    providing advice or assistance to consumers with regard to any activity or service which includes the credit record, credit history and credit rating of the consumer.

70. As a result of the acceptance of the Credit Services Fees, Defendants received consideration from Ms. Raulerson prior to the performance of "any service" which Defendants had agreed to perform for Ms. Raulerson as a consumer before such service was fully performed in contravention of 15 U.S.C. § 1679b (b).

71. Defendants have violated the provisions of 15 U.S.C. §1679c in that Defendants did not provide a prior written statement advising Ms. Raulerson of her rights as a consumer under state and federal law prior to the execution of the Attorney Employment Agreement.

72. Defendants have violated the provisions of 15 U.S.C. §1679e in failing to provide the required cancellation form.

73. Defendants have violated the provisions of 15 U.S.C. §1679d in that Defendants did not obtain from Ms. Raulerson a written and dated contract with the

terms and provisions required in said subsection of CROA.

74.    As a direct and proximate result of the violation of CROA by Defendants, Ms. Raulerson has been damaged.

75.    Pursuant to 15 U.S.C. §1679g(a)(1), Ms. Raulerson is entitled to recover the amount of any actual damages sustained by Ms. Raulerson or the amount paid by Ms. Raulerson to Defendants as a credit repair organization.

76.    Pursuant to 15 U.S.C. §1679g(a)(2), Ms. Raulerson is entitled to punitive damages in an amount as the Court may allow.

77.    Pursuant to 15 U.S.C. §1679g, Ms. Raulerson is entitled to recover reasonable attorney's fees in the bringing of the instant action.

78.    Ms. Raulerson has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment jointly and severally against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for:

A.    Actual and punitive damages to be established at trial pursuant to 15 U.S.C. §1679g;

B.    Costs and reasonable attorney's fees in accordance with 15 U.S.C.

§1679g(a)(3); and

C.    Such other and further relief as justice may require.

## COUNT II - ACTION FOR VIOLATION OF THE
## FLORIDA CREDIT SERVICE ORGANIZATIONS ACT

79.    This is an action for violation of the Florida Credit Service

Organizations Act, Fla. Stat. §817.7001, *et seq.* ("Florida CROA"), brought herein

pursuant to the doctrine of pendent jurisdiction.

80.    Ms. Raulerson realleges and reaffirms the allegations contained in

Paragraphs 1 through 64 above as if set forth hereat in full.

81.    At all times material hereto, Ms. Raulerson was a "buyer" as said term is defined under Fla. Stat. §817.7001(1).

82.    At all times material hereto, Defendants were a "credit service organization" as said term is defined under Fla. Stat. §817.7001(2)(a).

83.    At all times material hereto, the monies owed to the Raulerson Creditors constituted an "extension of credit" as said term is defined under Fla. Stat. §817.7001(3).

84.    Defendants have violated Florida CROA in the following respects:

(a)    Defendants have obtained valuable consideration prior to the full and complete performance of the services which Defendants as a credit service organization had agreed to perform in violation of Fla. Stat. §817.7005(1);

(b)    Defendants have made a statement that is false and misleading or that should be known by the exercise of reasonable care to be false or misleading, or omitted material facts to the Raulerson Creditors as a person which has extended credit to Ms. Raulerson in violation of Fla. Stat. §817.7005(3); and

(c)    Defendants have made or used a false or misleading representation or omitted material facts in the offer of sale of their services as a credit service organization or engaged, directly

or indirectly, in an act, practice or course of business that operate or would operate as a fraud or deception upon Ms. Raulerson or other persons in connection with their offer or sale of services as a credit service organization in violation of Fla. Stat. §817.7005(4).

85.     The Defendants have violated the provisions of Fla. Stat. §817.702 in that Defendants did not provide a written statement to Ms. Raulerson as buyer which contained the information required by Fla. Stat. §817.703.

86.     The Defendants have violated the provisions of Fla. Stat. §817.704 in that Defendants did not obtain from Ms. Raulerson a written and dated contract with the terms and provisions required by Florida CROA.

87.     As a direct and proximate result of the violations of the Florida CROA, Ms. Raulerson has been damaged.

88.     Pursuant to Fla. Stat. §817.706, Ms. Raulerson is entitled to recover actual damages, but in no case less than the amount paid by Ms. Raulerson to Defendants, plus reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment jointly and severally against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business

entities, for damages, together with interest, costs and attorney's fees pursuant to Fla. Stat. §817.706.

## COUNT III - ACTION FOR VIOLATION OF THE TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT

89.     This is an action for violation of 15 U.S.C. §6101, *et seq.*, known more commonly as the "Telemarketing and Consumer Fraud and Abuse Prevention Act," ("Telemarketing Act").

90.     Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

91.     At all times material hereto, Ms. Raulerson was a "customer" as said term is defined under 16 C.F.R. §310.2 (n).

92.     At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

93.     At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Raulerson as said term is defined under 16 C.F.R. §310.2(aa).

94.     The TSR imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

95.     Pursuant to 16 C.F.R. §310.6(b)(5) and (6), the Telemarketing Act applies to the debt relief services and the sellers who advertise on the internet when

22

the consumer responds by telephone.

96.    Defendants have violated the Telemarketing Act with respect to its services to Ms. Raulerson in the following respects:

> (a)    by requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i);
>
> (b)    by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and
>
> (c)    by misrepresenting any debt relief service provided by Defendants in contravention of 16 C.F.R. §310.3(a)(2)(x).

97.    Defendants have maintained a practice and pattern of telemarketing which violates the Telemarketing Act.

98.    As a direct and proximate result of the violation of the Telemarketing Act, Ms. Raulerson has sustained actual economic and non-economic damages in excess of Fifty Thousand Dollars, ($50,000.00).

99.    Prior to the filing of the instant action, Ms. Raulerson provided a copy of the Complaint to the FTC pursuant to 15 U.S.C. §6104(b).

100.    Pursuant to 15 U.S.C. §6104(d), Ms. Raulerson is entitled to the recovery of attorney's fees and costs for the bringing of the instant action.

101.    Ms. Raulerson has retained the undersigned law office to represent her

interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment jointly and severally against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for:

A.  Actual damages to be established at trial pursuant to 15 U.S.C. §6104(a);

B.  Injunctive relief against Defendants prohibiting further violations of the TSR as described above pursuant to 15 U.S.C. §6104(a);

C.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §6104(d); and

D.  Such other and further relief as justice may require.

## COUNT IV - ACTION FOR VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

102.  This is an action for violation of Fla. Stat. §501.201, *et seq.,* known more commonly as the "Florida Deceptive and Unfair Trade Practices Act" (the "DUTPA") brought herein pursuant to the pendent jurisdiction of the Court.

103.  Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

### *General Allegations as to DUTPA*

104.   At all times material hereto, Ms. Raulerson was an "interested party or person" as said term is defined under Fla. Stat. §501.203(6).

105.   By virtue of the acts described above, Defendants were engaged in "trade or commerce" as said term is defined under Fla. Stat. §501.203(8).

### *Violation of the Telemarketing Sales Rule*

106.   At all times material hereto, Ms. Raulerson was a "customer" as said term is defined under 16 C.F.R. §310.2(n).

107.   At all times material hereto, the business activities of Defendants constituted a "debt relief service" as said term is defined under 16 C.F.R. §310.2(o).

108.   At all times material hereto, Defendants were "seller(s)" with respect to debt relief services offered to Ms. Raulerson as said term is defined under 16 C.F.R. §310.2(aa).

109.   The TSR imposes specific restrictions and requirements on debt relief services such as credit counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

110.   Pursuant to 16 C.F.R. §310.6(b)(5) and (6), the TSR applies to the debt relief services and the sellers who advertise on the internet when the consumer responds by telephone.

111.   Defendants have violated the TSR with respect to its services to Ms. Raulerson in the following respects:

25

(a)  By requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i);

(b)  by failing to escrow fees in contravention of 16 C.F.R. §310.4(a)(5)(ii); and

(c) by misrepresenting any debt relief service provided by Defendants in contravention of 16 C.F.R. §310.3(a)(2)(x).

112.   The violation of the TSR is a per se violation of the DUTPA pursuant to Fla. Stat. §501.211(3)(c).

### *Violation of the FDUTPA as to Senior Citizens*

113.   At all times material hereto, Ms. Raulerson was a "senior citizen" as said term is defined under Fla. Stat. §501.2077(1)(e).

114.   Pursuant to Fla. Stat. §501.2077, Defendants willfully used a method, act or practice in violation of DUTPA which victimized or attempted to victimize a senior citizen or person who has a disability.

115.  As a direct and proximate result of the above-described acts, Defendants are liable for a civil penalty of not more than Fifteen Thousand Dollars ($15,000.00) for each such violation if he or she knew or should have known that his or her conduct was unfair or deceptive pursuant to Fla. Stat. §501.2077(2).

*                    *                    *

116.   As more particularly described above, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. §501.204(1) and (2)174.

117.   Pursuant to Fla. Stat. §501.211, Ms. Raulerson is entitled to obtain a declaratory judgment that the acts and practices of Defendants under the DUTPA and to enjoin Defendants from further violations of the DUTPA.

118.   It is in the interest of the protection of consumers that the Defendants be prohibited and proscribed from further violations of the DUTPA as described above.

119.   As a direct and proximate result of the violation of the DUTPA, Ms. Raulerson has been damaged and is an aggrieved person.

120.   Ms. Raulerson has retained the undersigned law office to represent her interest herein and is obligated to pay said law office a reasonable fee for its services.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, unknown business entities, for:

A.     Compensatory economic damages;

B.    Declaratory relief against Defendants adjudicating that the actions of

Defendants described above constitute violations of the DUTPA;

C.    Injunctive relief against Defendants proscribing Defendants from

further violations of the DUTPA as described herein; and

D.    Attorney's fees and court costs pursuant to Fla. Stat.

§501.2105.

## COUNT V - ACTION FOR BREACH OF CONTRACT

121.    This is an action for breach of contract brought herein pursuant to the

pendent jurisdiction of the Court.

122.    Ms. Raulerson realleges and reaffirms the allegations contained in

Paragraphs 1 through 64 above as if set forth hereat in full.

123.    By failing to provide any meaningful legal services on behalf of Ms.

Raulerson, Defendants have breached the terms and provisions of the Contract.

124.    As a result of the breach of the Contract, Ms. Raulerson has been

damaged. The damages of Ms. Raulerson include the loss of monies paid to

Defendants together with damage to her credit and credit reputation.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment

against Defendants, Financial Solutions Group, LLC, a Delaware limited liability

company, and Steven Lovern, an individual, jointly and severally, together with

interest costs and attorney's fees.

28

## <u>COUNT VI - ACTION FOR FRAUD</u>

125.   This is an action for fraud brought herein pursuant to the pendent jurisdiction of the Court.

126.   Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

127.   As more fully described above, Defendants misrepresented material facts and made material omissions concerning the services to be provided by Defendants.

128.   Defendants knew that the representations set forth above were false or made such representations recklessly, and Defendants had no reasonable grounds for believing those representations to be true.

129.   Defendants knew that the above representations and omissions concerning the services of Defendants were material and important.

130.   Defendants intended to deceive Ms. Raulerson, who relied upon the misrepresentations and omission to her detriment.

131.   As a direct and proximate result of the fraud and non-disclosures by Defendants, Ms. Raulerson has suffered actual damages as described above.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment for actual and punitive damages against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and

John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, together with interest and costs.

## COUNT VII - ACTION FOR NEGLIGENT MISREPRESENTATION

132.  This is an action for negligent misrepresentation brought herein pursuant to the pendent jurisdiction of the Court.

133.  Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

134.  As more particularly described above, Defendants misrepresented and failed to disclose material facts concerning the services to be provided by Defendants.

135.  Defendants believed the above statements to be true and to be complete, but which were in fact false and incomplete.

136.  Defendants were negligent in making the statements and omissions concerning the services of Defendants.  Defendants should have known that the statements were false.

137.  Defendants, in making the statements concerning the services of Defendants, intended that Ms. Raulerson rely upon said statements.

138.  As a direct and proximate result of the negligent misrepresentations of the Defendants, Ms. Raulerson has suffered actual damages as described above.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment

for damages against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, together with interest and costs.

## COUNT VIII- ACTION FOR FRAUDULENT INDUCEMENT

139.   This is an action for fraudulent inducement brought herein pursuant to the pendent jurisdiction of the Court.

140.   Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

141.   As more particularly described above, Defendants induced Ms. Raulerson into signing the Contract by knowingly making misrepresentations of material fact and omitting material facts with the intent that Ms. Raulerson rely on them to her detriment.

142.   Defendants' misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Ms. Raulerson rely on them or be deceived by them to her detriment.

143.   Ms. Raulerson justifiably relied upon the misrepresentations to her detriment and further, had Ms. Raulerson been advised of the truth, Ms. Raulerson would not have entered into the Attorney Employment Agreement.

144.   As a result of the fraud and deceit by Defendants, Ms. Raulerson has

suffered actual damages as described above.

WHEREFORE, Plaintiff, Judith Raulerson an individual, demands judgment for compensatory and punitive damages against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, together with interest and costs.

## COUNT IX - ACTION FOR UNJUST ENRICHMENT

145.   This is an action for unjust enrichment brought herein pursuant to the pendent jurisdiction of the Court.

146.   Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

147.   Ms. Raulerson has conferred a benefit on Defendants by paying for services offered by Defendants.

148.   Defendants have knowledge of the benefit conferred by Ms. Raulerson.

149.   Defendants have accepted and/or retained the benefit conferred by Ms. Raulerson.

150.   The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying the fair value thereof.

151.   Defendants have been unjustly enriched by the retention of the benefits paid by Ms. Raulerson.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment jointly and severally against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for damages, interest, and costs, and for such other and further relief as justice may require.

## <u>COUNT X - ACTION FOR CIVIL CONSPIRACY</u>

152    This is an action for civil conspiracy brought herein pursuant to the pendent jurisdiction of the Court.

153.    Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

154.    As more particularly described above, an agreement existed between the respective Defendants to do an unlawful act or to do a lawful act by unlawful means, to-wit: the charging of an unlawful and unconscionable fee for "legal services" not in compliance with applicable federal and state laws.

155.    As a result of the conspiracy between the respective Defendants to violate federal and state consumer protection laws, Ms. Raulerson has been damaged as more particularly described above.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment jointly and severally against Defendants, Financial Solutions Group, LLC, a

Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for actual and punitive damages, interest, costs, and attorney's fees as permitted by law and for such other and further relief as justice may require.

## COUNT XI - ACTION FOR VIOLATION OF THE
## FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.

156.   This is an action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

157.   Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

158.   Defendants are "persons" as that term is defined in 15 U.S.C. § 1681a (b).

159.   The Fair Credit Reporting Act ("FCRA") establishes very specific rules placing limitations upon an entity (or "person") seeking to obtain a consumer's credit history or the content of a consumer's credit file, as follows:

(f)     Certain use or obtaining of information prohibited.—A person shall not use  or obtain a consumer report for any purpose unless—

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. §1681b(f).

160.    Section § 1681b(a)(3) of the FCRA lists the all-inclusive purposes for

which a consumer report can be obtained, as follows:

(a) In General.— . . . [A] consumer reporting agency may furnish a
consumer  report under the following circumstances and no other:
* * *

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction
involving  the consumer on whom the information is to be furnished and
involving the   extension of credit to, or review or collection of an
account of, the consumer; or
* * *

(F) otherwise has a legitimate business need for the information—(i) in
connection  with a business transaction that is initiated by the consumer;
or (ii) to review an   account to determine whether the consumer
continues to meet the terms of the  account.

161.    Upon information and belief, before FSG telephoned Ms. Raulerson, it

had obtained, accessed, reviewed, and/or used Ms.  Raulerson's consumer reports

either directly or through a third party.

162.    Ms. Raulerson did not initiate any business transaction with any of the

Defendants prior to Defendants accessing and using her credit reports.

163.    Before FSG's telemarketing call, Ms. Raulerson had not provided the

Defendants with authorization to obtain, access, review, or use her consumer reports.

164.    At the time defendants first obtained, accessed, reviewed, or used Ms.

Raulerson's credit reports, it had no prior business relationship or account with Ms.

Raulerson

165.    The purpose for which defendants obtained, accessed, reviewed, and used Ms. Raulerson's consumer credit reports was for marketing services to her, which has nothing to do with any permissible purpose as set forth under the FCRA.

166.    Defendants had actual knowledge that they had no permissible purpose to obtain Plaintiff's credit information from any consumer reporting agency or from any third party or affiliate who obtained Ms. Raulerson's consumer reports.

167.    For FSG and the other defendants to access the consumer credit history of a consumer whom it is known to not have any account with FSG constitutes willful non-compliance with the FCRA.

168.    As a direct and proximate result of Defendants' willful conduct as outlined above, Plaintiff is entitled to $100–$1000 in statutory damages, plus punitive damages and reasonable attorney's fees together with the costs of this action as provided by 15 U.S.C. § 1681n.

169.    Alternatively, the impermissible access of Plaintiff's credit information constitutes a negligent violation as set forth in 15 U.S.C. § 1681o. In this regard, Plaintiff is entitled to recover her actual damages in an amount to be proven at trial, plus attorney's fees together with the costs of this action.

170.    The conduct, action and inaction of Defendants entitles Plaintiffs to recover actual damages under 15 U.S.C. §1681o.

171.    As a result of the conduct, action and inaction of Defendants, Plaintiff suffered damage as set forth above.

172.    Plaintiff is entitled to recover reasonable attorney's fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681o.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment in her favor against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. §1681o.

## COUNT XII - ACTION FOR VIOLATION OF
## THE FLORIDA CREDIT COUNSELING SERVICES ACT

173.    This is an action for violation of the Florida Credit Counseling Services Act, Fla. Stat. §817.807, *et seq.* ("Florida CCSA"), brought herein pursuant to the doctrine of pendent jurisdiction of the Court.

174.    Ms. Raulerson realleges and reaffirms the allegations contained in Paragraphs 1 through 64 above as if set forth hereat in full.

175.    At all times material hereto, Defendants were a "credit counseling agency" as said term is defined under Fla. Stat. §817.801(1).

176.    As more particularly described above, Defendants provided "credit counseling services" as said term is defined under Fla. Stat. §817.801(2).

177.    As more particularly described above, Defendants provided "debt

management services" as said term is defined under Fla. Stat. §817.801(4).

178.   Fla. Stat. §817.802 concerning unlawful fees and costs provides with

respect to debt management services or credit counseling services provides :

> (1) It is unlawful for any person, while engaging in debt management services or credit counseling services, to charge or accept from a debtor residing in this state, directly or indirectly, a fee or contribution greater than $50 for the initial setup or initial consultation. Subsequently, the person may not charge or accept a fee or contribution from a debtor residing in this state greater than $120 per year for additional consultations or, alternatively, if debt management services as defined in s. 817.801(4)(b) are provided, the person may charge up to the lesser of 15 percent of the amount paid monthly by the debtor to the person or $75 per month.

179.   As a result of the collection of the Credit Services Fee by Defendants,

Defendants have violated the restrictions of Fla. Stat. §817.802.

180.   Fla. Stat. §804 mandates that any person engaged in debt management

services or credit counseling services shall:

> (1) Any person engaged in debt management services or credit counseling services shall:
> (a) Obtain from a licensed certified public accountant an annual audit in accordance with generally accepted auditing standards that shall include all accounts of such person in which the funds of debtors are deposited and from which payments are made to creditors on behalf of debtors.
> (b) Obtain and maintain at all times insurance coverage for employee dishonesty, depositor's forgery, and computer fraud. The insurance coverage must be in an amount not less than the greater of $100,000 or 10 percent of the monthly average of the aggregate amount of all deposits made for distribution to creditors with such person by all debtors for the 6 months immediately preceding the date of initial

application for or renewal of the insurance. The deductible on such coverage shall not exceed 10 percent of the face amount of the policy coverage.

(2) A copy of the annual audit and insurance policies required by this section shall be available for public inspection at each branch location. Copies shall be provided, upon written request, to any party requesting a copy for a charge not to exceed the cost of the reproduction of documents.

181.  By information and belief, Defendants have not complied with the audit, record keeping and insurance requirements of Fla. Stat. §817.804(1)(2).

182.  As a direct and proximate result of the violation of the Florida CCSA by Defendants, Ms. Raulerson has been damaged as described above.

183.  Pursuant to Fla. Stat. §817.806(1), Ms. Raulerson is entitled to recover damages, but in no case less than the amount paid by Ms. Raulerson to Defendants, plus reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, Judith Raulerson, an individual, demands judgment in her favor against Defendants, Financial Solutions Group, LLC, a Delaware limited liability company, and Steven Lovern, an individual, and John Doe 1-5, unknown individuals, and John Doe Corporation 1-10, unknown business entities, for damages, together with attorney's fees and court costs pursuant to Fla. Stat. §817.806(1).

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Judith Raulerson, an individual, pursuant to Rule 38(b), Federal

Rules of Civil Procedure, demands a trial by jury of all issues so triable.

<div style="margin-left: 50%;">

*/s/ Robert W. Murphy*_____
ROBERT W. MURPHY
Florida Bar No.: 717223
440 Premier Circle, Suite 240
Charlottesville, Virginia 22901
Telephone: (954) 763-8660
Fax: (954) 763-8607
rwmurphy@lawfirmmurphy.com

COUNSEL FOR PLAINTIFF

</div>